UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GE DANDONG, et al.,<br><br>      Plaintiffs,<br><br>      v.<br><br>PINNACLE PERFORMANCE LIMITED, et al.,<br><br>      Defendants. | 10 Civ. 8086 (LBS)<br><br>**MEMORANDUM<br>& ORDER** |

SAND, J.

In the recent case, *In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. May 5, 2011), the Second Circuit announced a test that applies when a party wants access to confidential mediation material. The *In re Teligent* test requires, among other things, that a party seeking confidential mediation documents show a "special need." This case calls for us to determine whether a magistrate judge's ruling that the "special need" prong was satisfied was contrary to law.

Plaintiffs are Singaporean investors who allege they were defrauded regarding certain notes created by Defendants[1] and sold through middlemen known as "distributors." Prior to the commencement of this action, some investors, including some of the Plaintiffs, entered into confidential mediation in Singapore with distributors before the Financial Industry Disputes Resolution Centre Ltd. ("FIDReC"). In this action, Plaintiffs moved for a protective order to keep FIDReC documents from being discovered by Defendants. On July 16, Magistrate Judge Gabriel W. Gorenstein granted Plaintiffs' motion for a protective order in part and denied it in

---

[1] Defendants note that named defendant Pinnacle Performance Limited did not join the document request or oppose Plaintiffs' objection because it "has not entered a general appearance in this action and continues to assert that it is not subject to personal jurisdiction in the Southern District of New York." Defs.' Resp. Pls.' Objections 1 n.1. In this memorandum, "Defendants" does not include Pinnacle Performance Limited following this footnote call.

part. Plaintiffs filed an objection on July 31,[2] objecting to part of Magistrate Judge Gorenstein's denial.

Plaintiffs object to discovery of their mediation communications regarding their reliance because, they argue, Magistrate Judge Gorenstein misapplied the three-part test announced in *In re Teligent*. We agree with Magistrate Judge Gorenstein that *In re Teligent* applies to Defendants' attempt to discover Plaintiffs' FIDReC communications. But we disagree about how special the need must be to pass the *In re Teligent* test. Because the "special need" required by the *In re Teligent* test is like the compelling need required to modify a protective order and that Defendants could not show such a need, the portion of Magistrate Judge Gorenstein's order ("the Order") to which the Plaintiffs objected is contrary to law and must be reversed.

## I. Background

Plaintiffs are Singaporean investors who allege they were defrauded by certain notes created by Defendants and sold through middlemen known as distributors. See *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2011 WL 5170293, at *1–2 (S.D.N.Y. Oct. 31, 2011), for more factual background. Prior to the commencement of this action, some investors, including some of the Plaintiffs, entered confidential mediation with distributors before FIDReC.

Defendants sent a discovery request to Plaintiffs that documents and communications that Plaintiffs thought would include confidential mediation documents. *See* Pls.' Mem Law Supp. Mot. Protective Order 3–4.

---

[2] Technically Plaintiffs' objection is not timely under Federal Rule of Civil Procedure 72(a). Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the [non-dispositive] order within 14 days after being served with a copy."). However, Plaintiffs first filed their objection on time on July 30. Because Plaintiffs filed it electronically as a "Brief," instead of as an "Objection," the electronic docketing service required Plaintiffs to re-file it. They did so the next day. Such electronic docketing difficulties cannot cause parties to lose "any right because of a nonwillful failure to comply," Fed R. Civ. P. 83(a); *see also Transportes Navieros & Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V.*, 572 F.3d 96, 99–100 (2d Cir. 2009) (applying the rule to find a late brief timely under similar circumstances), and so we treat Plaintiffs' objection as timely both for Rule 72(a) purposes and with regards to Magistrate Judge Gorenstein's stay, discussed below, ensuring they lose no rights.

On May 29, Plaintiffs moved for a protective order to prevent Defendants from questioning Plaintiffs at any depositions concerning their mediation or discovering any "documents created or produced in furtherance of" mediation. *Id.* at 1.

After receiving papers from both sides, Magistrate Judge Gorenstein held oral argument on July 6. At the conclusion of oral argument, Magistrate Judge Gorenstein told Plaintiffs to give him "every page" for in camera review "[u]nless you think it's something that the defendants already have," in which case it should go to Defendants. Tr. 36:8–19, July 6, 2012, ECF No. 94.

On July 16, Magistrate Judge Gorenstein announced his decision. Magistrate Judge Gorenstein found the *In re Teligent* test controlling. *See* Tr. 4:15–17, July 16, 2012, ECF No. 92. Under that test, Magistrate Judge Gorenstein granted Plaintiffs a protective order for everything related to mediation except for three types of information: (1) settlement amounts and release language in final settlement agreements, (2) Plaintiffs' own statements about their basis for investing in the notes and the material on which they relied, *id.* 4:14–5:9, and (3) any documents in the mediation files that existed independently of the mediation.[3]

Plaintiffs ultimately objected to the second category and therefore we describe Magistrate Judge Gorenstein's reasoning about that category in more detail. Magistrate Judge Gorenstein required production of Plaintiffs' "actual statements" in the mediation that describe "what the plaintiffs said with respect to the basis on which they [in]vested in or purchased the Pinnacle notes and, more specifically, what they relied on as part of that decision making process." *Id.* 4:24–5:9. Magistrate Judge Gorenstein said that "normally, . . . discovery for  impeachment

---

[3] This third category—"any materials that existed independent of the mediation process and regardless of the fact that they happened to have been included in someone's file or in a letter or whatever, an attachment that was generated as part of the mediation process"—was the material that Magistrate Judge Gorenstein had intended Plaintiffs to turn over to the Defendants after the July 6 hearing. Tr. 19:19–20:3, July 16, 2012.

3

material is not . . . a special need," but made a distinction between "extrinsic" and "intrinsic" impeachment material. *Id.* 3:25–4:4. "Extrinsic impeachment material would be finding out . . . bad things people have done in their lives or other occasions," but Plaintiffs' statements regarding their basis and reliance were "intrinsic" because they "relate[] to the very issue that's going on here." *Id.* 4:5–10.

Magistrate Judge Gorenstein rejected Plaintiffs' contention that Defendants had no need to discover Plaintiffs' statements in mediation about reliance because Defendants could discover facts about Plaintiffs' reliance in depositions. Magistrate Judge Gorenstein explained that Plaintiffs "had a very different incentive in the mediation process in Singapore as to who to identify the culprit as it were than they do here." *Id.* 3:17–24.

Plaintiffs noted that they might object to the Order. *Id.* 28:4–6. To give Plaintiffs time to object, Magistrate Judge Gorenstein did not require production for two weeks. *Id.* 29:15–17

Magistrate Judge Gorenstein formalized his conclusion in a short order granting the protective order in part and denying it in part "[f]or the reasons stated on the record" at the conference. Order, July 16, 2012, ECF No. 90. On July 23, 2012, Magistrate Judge Gorenstein stayed his order provided objections were filed by July 30. Endorsed Letter, July 23, 2012, ECF No. 91.

Plaintiffs' objection, which we treat as though it were filed on July 30, only objected to denial of the protective order regarding the second category of documents: Plaintiffs' own statements as to their basis for investing and reliance. *See* Pls.' Objections 6 (explaining that those statements were "[a]t issue here"). We now review the Order.

II.    **Standard of Review**

4

When a party objects to a non-dispositive pretrial matter, we may only reconsider parts of that matter where a party has made a showing of clear error.  28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); *see also Lee v. Butts*, No. 11 Civ. 2358, 2012 WL 32077, at *1 (S.D.N.Y. Jan. 3, 2012) ("When a party files a timely objection to a magistrate judge's order on a non-dispositive matter, the district judge to whom the case is assigned shall modify or set aside any portion of the order that is clearly erroneous or contrary to law.  Discovery issues are, for the most part, considered non-dispositive." (citation omitted) (citing Fed. R. Civ. P. 72(a) and *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990))).  "An order is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *WestLB AG v. BAC Fla. Bank*, No. 11 Civ. 5398, 2012 WL 3135773, at *3 (S.D.N.Y. Aug. 2, 2012) (quoting *Collens v. City of N.Y.*, 222 F.R.D. 249, 251 (S.D.N.Y. 2004)).  We now review the order to determine whether any part of it was shown to be clearly erroneous or contrary to law.

**III. Discussion**

**A. The Order Was Contrary to Law When It Found the Desire for Intrinsic Impeachment Material Was a Special Need**

Plaintiffs argue they should not be required to disclose their mediation statements on reliance and their basis for investment because Magistrate Judge Gorenstein misapplied the three-part test in *In re Teligent*. *In re Teligent* held that:

> A party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality. . . . All three factors are necessary to warrant disclosure of otherwise non-discoverable documents.

640 F.3d at 58.

Before we determine whether the desire for intrinsic impeachment material is a special need we must determine whether the *In re Teligent* test protects the confidentiality of mediations in which the confidentiality order is purely private. We agree with Magistrate Judge Gorenstein that it does. *In re Teligent*'s facts concern a mediation in which a mediation order that "included certain provisions relating to the confidentiality of the mediation process" was entered by the Bankruptcy Court in the Southern District of New York. *In re Teligent, Inc.*, 417 B.R. 197, 202–03 (Bankr. S.D.N.Y. 2009). Given the language of the Second Circuit's opinion in *In re Teligent* and that its policy rationale applies with equal force to mediations in which confidentiality is stipulated by private parties, we agree with Magistrate Judge Gorenstein that the test applies to mediation material agreed to be kept confidential by the parties, such as the material created in the FIDReC proceeding.

Next, because the *In re Teligent* test is virtually the same as the test for modifying a protective order, the "special need" required by the *In re Teligent* test must be like the "compelling need" required to modify a protective order. Magistrate Judge Gorenstein held that Defendants' interest in impeachment material directly relating to elements of the claim—what he termed "intrinsic" impeachment—constituted a special need. In their briefs responding to plaintiff's objection, Defendants argued that this is a special need, but could only point to cases holding that such impeachment is a "particularized" need. Because the desire for impeachment information is only particularized and not compelling, we reverse and therefore need not consider how the other parts of the *In re Teligent* test apply to these facts.

1. *The* In Re Teligent *Test Applies to Mediations Made Confidential by the Parties*

First, we find that Magistrate Judge Gorenstein was correct to apply the *In re Teligent* test. Although *In re Teligent* is about a mediation confidentiality order entered by a federal bankruptcy court, 640 F.3d at 56, nothing in the opinion limits the test to mediations ordered to be kept confidential by a court or government agency. By its own terms, the test applies to all situations in which a "party seek[s] disclosure of confidential mediation communications." *Id.* at 58.

The Second Circuit's policy basis for the test applies with as much force to private mediations as it does to court-sponsored mediations: "Confidentiality is an important feature of the mediation and other alternative dispute resolution processes. Promising participants confidentiality in these proceedings 'promotes the free flow of information that may result in the settlement of a dispute,' and protecting the integrity of alternative dispute resolution generally." *Id.* at 57–58 (quoting *In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 (5th Cir.1998)). Additionally, the Second Circuit used sources that referred to both public and private mediation. To support its policy argument, the Second Circuit cited at least two cases that were about private mediations, *Sheldone v. Pennsylvania Turnpike Commission*, 104 F. Supp. 2d 511 (W.D. Pa. 2000), and *Fields-D'Arpino v. Restaurant Associates, Inc.*, 39 F. Supp. 2d 412 (S.D.N.Y. 1999). To support its test, the Second Circuit also relied on the Uniform Mediation Act, which applies to private mediation. *See In re Teligent*, 640 F.3d. at 58–59 (citing Uniform Mediation Act); Uniform Mediation Act § 3.

Because *In re Teligent* applies by its terms to all mediations, is based on policy considerations that have equal force in private mediations, and relies on sources that are about or include private mediation, we agree that the *In re Teligent* test applies to these confidential mediation communications.

*2. The "Special Need" in the* In Re Teligent *Test Is Like the "Compelling Need" in the Test*

*To Modify a Protective Order and Therefore Defendants' Desire for Intrinsic Impeachment*

*Evidence Is Not "Special" Enough*

Plaintiffs' main objection is that Defendants' need is not "special" enough to pass the *In re Teligent* test. Magistrate Judge Gorenstein accepted that Defendants' need to find out what Plaintiffs said in mediation regarding their reliance was a special need. Magistrate Judge Gorenstein called the reliance material "intrinsic impeachment material." Tr. 3:17–5:6, July 16, 2012. The desire for impeachment material is a particularized need, but not a compelling or special one, and therefore Magistrate Judge Gorenstein's conclusion that Defendants passed the *In re Teligent* test is contrary to law.

In *In re Teligent*, the Second Circuit created the governing test, discussed above. It derived the *In re Teligent* test from the test for modifying a protective order. *See* 640 F.3d at 58 (supporting the three-part *In re Teligent* test with two cases describing the legal standard for modifying a protective order and the Fourth Circuit case relied on by the district court); *id.* at 59 (arguing that other possible standards were "consistent with the standard governing modification of protective orders entered under Federal Rule of Civil Procedure 26(c)"). Under the protective order modification test, the movant must show "improvidence in the grant of the order or some extraordinary circumstance or compelling need." *Id.* at 59 (quoting *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001)). In addition to relying on a test calling for a "compelling need," the opinion's policy rationale is the promotion of the confidentiality of mediation. That rationale favors a high threshold to overturn a presumption of confidentiality. The Second Circuit's analogy to the compelling need standard and its policy basis shows that a special need is like a compelling need.

8

A compelling need is a very high bar to overcome. When courts in our circuit determine that a party has relied on a protective order, it is very difficult for movants to modify that order.[4] The Second Circuit acknowledged that its protective order modification test has, as its default, a "strong presumption against the modification of a protective order," *In re Teligent*, 640 F.3d at 59 (quoting *SEC v. TheStreet.com*, 273 F.3d at 229); *see also Med. Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC*, Nos. 06 Civ. 7764 and 06 Civ. 13,516, 2009 WL 2135294, at *1 (S.D.N.Y. July 16, 2009) (calling the modification of a protective order test "stringent"); 8A Richard L. Marcus, Federal Practice and Procedure § 2044.1 (3d ed. Westlaw 2012) (asserting that, in the progenitor of the current protective order modification test, the Second Circuit "embraced a very restrictive attitude toward modification of protective orders"). The Second Circuit's analogy to this presumption shows that they wanted a strong standard.

The result that "special need" is a very high bar is also consistent with the two cases that have applied the *In re Teligent* test so far. Both *Avocent Redmond Corp. v. Raritan Americas, Inc.*, 10 Civ. 6100, 2011 WL 4790545 (S.D.N.Y. Sept. 26, 2011), which applied *In re Teligent* as an approximation of Federal Circuit law, and *In re Teligent* itself found movants could not show a special need.

By contrast, when Defendants assert that their need was "special," they cite cases that show only that impeachment is a "particularized" need. *See Dennis v. United* States, 384 U.S. 855, 870 (1966) (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958))

---

[4] Because this presumption is so strong, the easiest way to modify the protective order is to find one of at least three exceptions where the strong presumption against access to material covered by a protective order does not apply. "First, . . . a protective order can be modified if it was improvidently granted. . . . A second exception . . . exists for 'judicial documents.' . . . Third, [the presumption] does not apply when 'protective orders that are on their face temporary or limited [do] not justify reliance by the parties.'" *Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 F. App'x 878, 880–81 (2d Cir. 2005) (quoting *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 n. 7 (2d Cir.2004)). Presumably these exceptions would apply with regard to confidential mediation communications where appropriate and analogous.

(finding that using a grand jury transcript to impeach a witness is a "particularized need"); *Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222, 1996 WL 337277, at *1–2 (S.D.N.Y. June 19, 1996) (finding that impeachment met the minority "particularized showing" standard within our Circuit for disclosure of settlement information); *cf. Contship Containerlines, Ltd. v. PPG Indus., Inc.*, No. 00 Civ. 194, 2003 WL 1948807, at *2 (S.D.N.Y. Apr. 23, 2003) (requiring disclosure of arbitration materials that were assumed *arguendo* to be confidential as implied by British law if "(1) the documents are relevant and (2) disclosure is necessary for disposing fairly of the cause or matter or for saving costs" (quoting *Caringal v. Karteria Shipping, Ltd.*, No. 99 Civ. 3159, 2001 WL 874705, at *1 (E.D. La. Jan. 24, 2001) (internal quotation marks omitted))).

Defendants' need is certainly particularized or specific, but it is not special or compelling. It is not an extraordinary case when plaintiffs enter mediation against some of all possible defendants, and the remaining defendants want to use material from that mediation to impeach plaintiffs. So finding would discourage plaintiffs from entering into mediation with any defendants when they do not want to enter into mediation with all defendants.

Because Defendants cannot show a "special need" under *In re Teligent* with regards to Plaintiffs' confidential mediation communications about reliance, denial of Plaintiffs' protective order for those materials is contrary to law and must be reversed.

## B.  The Remainder of the Order Was Not in Clear Error

Regarding the remainder of the order, neither Plaintiffs nor Defendants have made a showing of clear error. We see none, and therefore adopt the remainder of the Order.

## IV.  Conclusion

For the reasons specified above, we respectfully **REVERSE** the portion of the Order compelling discovery of Plaintiffs' mediation communications regarding their basis for

investment and the materials on which they relied.  A protective order is granted for that material.  We **ADOPT** the remainder of the Order.

**SO ORDERED.**

October 7, 2012
New York, N.Y.

_____
U.S.D.J.

11