UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

GE DANDONG; LOH TUCK WOH PETER;   :
SINGAPORE GOVERNMENT STAFF CREDIT   :   Case No.: 1:10-cv-08086 (JMF) (GWG)
COOPERATIVE SOCIETY, LTD; NI YAN AMY;   :
ANG SOO CHENG; CHOH GEK HONG   :
JOHNSON; NG SHOOK PHIN SUSAN; and   :   ORAL ARGUMENT REQUESTED
ZHAO YUZHENG,   :
                    Plaintiffs,   :
  :
  :
    -vs.-   :
  :
  :
PINNACLE PERFORMANCE LIMITED;   :
MORGAN STANLEY ASIA (SINGAPORE) PTE;   :
MORGAN STANLEY & CO. INTERNATIONAL   :
PLC; MORGAN STANLEY CAPITAL SERVICES   :
INC.; MORGAN STANLEY & CO. INC.; and   :
MORGAN STANLEY,   :
  :
                Defendants.   :

---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE DECLARATIONS OF PLAINTIFFS' EXPERTS ILYA ERIC KOLCHINSKY AND CRAIG A. WOLSON

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Pinnacle Performance Limited,
Morgan Stanley Asia (Singapore) Pte., Morgan
Stanley & Co. International plc, Morgan
Stanley Capital Services Inc., Morgan Stanley &
Co. Inc. and Morgan Stanley*

## Table of Contents

**Page**

Preliminary Statement...................................................................................................... 1

Statement of Facts ............................................................................................................ 2

Argument ......................................................................................................................... 2

    I.   *Daubert* Standard Applies at the Class Certification Stage ................................. 2

    II.  The Kolchinsky and Wolson Declarations Do Not Assist the Court in Resolving the Pending Class Certification Motion.................................................... 3

    III. The Kolchinsky and Wolson Declarations Are Not Based on Sufficient Facts .................. 5

    IV. The Declarations of Mr. Kolchinsky and Mr. Wolson Constitute Improper Legal Opinions...................................................................................... 7

    V.  Neither Expert's Opinion Is Based on Reliable or Sufficient Data and Neither Employs a Reliable Methodology.......................................................... 10

Conclusion ..................................................................................................................... 17

## Table of Authorities

**Page**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.,*
269 F.R.D. 252 (S.D.N.Y. 2010) ............................................................................ 3

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
303 F.3d 256 (2d Cir. 2002) .......................................................................... 3, 10

*Crown Cork & Seal Co., Inc. v. Credit Suisse First Boston Corp.,*
No. 12-cv-05803-JLG, 2013 WL 978980 (S.D.N.Y. Mar. 12, 2013) ............... 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) .............................................................................. 2, 3, 10

*DeMarco v. Lehman Bros., Inc.,*
222 F.R.D. 243 (S.D.N.Y. 2004) .................................................................... 2, 5

*Duling v. Gristede's Op. Corp.,*
267 F.R.D. 86 (S.D.N.Y. 2010) ......................................................................... 2

*Fogarazzo v. Lehman Bros., Ltd.,*
No. 03 Civ. 5194(SAS), 2005 WL 361205 (S.D.N.Y. Feb. 16, 2005) .............. 4

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.,*
270 F.R.D. 150 (S.D.N.Y. 2010) ....................................................................... 4

*General Elec. Co. v. Joiner,*
522 U.S. 136 (1997) ........................................................................................ 11

*Grdinich v. Bradlees,*
187 F.R.D. 77 (S.D.N.Y. 1999) ....................................................................... 16

*Hutchinson v. Groskin,*
927 F.2d 722, (2d Cir. 1991) .......................................................................... 10

*In re Credit Suisse First Boston Corp. Sec, Litig.,*
250 F.R.D. 137 (S.D.N.Y. 2008) ..................................................................... 11

*In re Initial Public Offerings Sec. Litig.,*
471 F.3d 24 (2d Cir. 2006) ............................................................................... 2

*In re Rezulin Prods. Liab. Litig.,*
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................................................ 3, 15

*Kumho Tire Co., Ltd. v. Carmichael,*
526 U.S. 137 (1999) ........................................................................................ 10

*Linkco, Inc. v. Fujitsu Ltd.,*
No. 00 Civ. 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ........... 16

*Rondout Valley Cent. Sch. Dist. v. Coneco Corp.,*
321 F. Supp. 2d 469 (N.D.N.Y. 2004) .............................................................. 7

*S.E.C. v. Badian,*
    822 F. Supp. 2d 352 (S.D.N.Y. 2011) ............................................................ 14

*Snyder v. Wells Fargo Bank, N.A.,*
    No. Civ. 4496(SAS), 2012 WL 4876938 (S.D.N.Y. Oct. 15, 2012) .......................... 9

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.,*
    No. 95 Civ. 8136(RCC), 2001 WL 1602976 (S.D.N.Y. Dec. 14, 2001) ..................... 6

*U.S v. Tin Yat Chin,*
    371 F.3d 31 (2d Cir. 2004) ....................................................................... 11

*U.S. v. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991) ................................................................... 7, 9

*U.S. v. Jacques Dessange, Inc.,*
    No. S2 99 CR. 1182, 2000 WL 294849 (Mar. 21, 2000) ................................... 8, 9

*U.S. v. Mavashev,*
    No. 08 Cr. 902 (DLI), 2010 WL 234773 (E.D.N.Y. Jan. 14, 2010) .......................... 8

*U.S. v. Tomasetta,*
    No. 10 Cr. 1205(PAC), 2011 WL 6382562 (S.D.N.Y. Dec. 12, 2011) ...................... 8

*U.S. v. Williams,*
    506 F.3d 151 (2d Cir. 2007) ....................................................................... 2

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ............................................................................. 2

*Weiner v. Snapple Beverage Corp.,*
    No. 07 Civ. 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ...................... 3

*Weitz Co., LLC v. Lloyd's of London,*
    No. 4:04 CV 90353, 2007 WL 7131908 (S.D.Iowa 2007) .................................. 11

**Rules**

Advisory Committee Note, Fed. R. Evid. 704(a) ............................................... 9

Fed. R. Civ. P. 23 ................................................................................... 3

Fed. R. Evid. 702 ............................................................................... 3, 10

## **Preliminary Statement**

This Court should exclude the expert declarations of Ilya Eric Kolchinsky and Craig A. Wolson because neither declaration satisfies the Supreme Court's *Daubert* standard, which applies to class certification expert declarations. The Kolchinsky and Wolson Declarations should be excluded because they: (1) are irrelevant to class certification, (2) consist solely of impermissible legal conclusions, (3) are based on insufficient facts, and (4) are *not* the products of any recognized methodology, but rather result only from the individuals' subjective points of view.

*First*, the only issue currently before the Court is whether to certify the proposed class, but the Kolchinsky and Wolson Declarations never mention Rule 23 or its requirements. Both individuals' sworn testimony confirmed that they do not offer opinions regarding Rule 23's requirements. Instead, these proffered "experts" offer opinions on *merits* issues that are not relevant to class certification.

*Second*, the Kolchinsky and Wolson Declarations consist solely of legal conclusions, which are not proper subjects of an expert declaration. For example, both opine that certain alleged omissions were material. Courts consistently exclude expert testimony concerning legal topics like materiality.

*Third*, the Kolchinsky and Wolson Declarations are based on insufficient facts. Neither individual has any experience or knowledge of the Singapore securities marketplace, Singapore investors, Singapore disclosure standards, Singapore securities regulation, or Singapore credit linked note offerings. Moreover, neither Mr. Kolchinsky nor Mr. Wolson spoke with any of the named plaintiffs ("Plaintiffs"). They did not read any Plaintiff's deposition testimony. They have both admitted they do not know what any Plaintiff relied on when investing in Pinnacle Notes.

*Fourth* and finally, the Kolchinsky and Wolson Declarations did not employ reliable and verifiable methodologies. To be admitted, expert testimony must be more than simply the expert's own unmoored opinion. The expert's opinions must be able to be independently tested and verified. The Kolchinsky and Wolson Declarations are no more and no less than personal subjective speculation.

## Statement of Facts

Defendants adopt by reference the Statement of Facts in their Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, filed this same day.

## Argument

I.   ***Daubert* Standard Applies at the Class Certification Stage**

The Supreme Court's recent opinion in *Wal-Mart Stores, Inc. v. Dukes* confirms that courts should apply the *Daubert* standard to class certification expert testimony. 131 S. Ct. 2541, 2551, 2554-55 (2011) (rejecting lower court's determination "that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings"). Second Circuit precedent and decisions in this District also recognize that the *Daubert* standard should be applied at this stage. *See In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006); *Duling v. Gristede's Op. Corp.*, 267 F.R.D. 86, 94-96 (S.D.N.Y. 2010); *DeMarco v. Lehman Bros., Inc.*, 222 F.R.D. 243, 248-49 (S.D.N.Y. 2004). Plaintiffs must establish the admissibility of their experts' testimony by a preponderance of the evidence. *See U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

Through *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court made clear that district courts must act as "gatekeepers" and enforce Federal

Rule of Evidence 702.  Taken together, *Daubert* and Rule 702 require that expert testimony:
(1) assist the court, (2) be based on sufficient facts and data and employ a reliable methodology,
(3) be from a qualified expert and address proper topics of expert testimony, and (4) result from
reliable application of the expert's methods to the facts of the case.  *See* Fed. R. Evid. 702;
*Daubert*, 509 U.S. at 589-92; *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265-67
(2d Cir. 2002).  Because, as discussed below, the Kolchinsky and Wolson Declarations do not
satisfy any of these requirements, this Court should exclude and ignore both declarations.

## II.   The Kolchinsky and Wolson Declarations Do Not Assist the Court in Resolving the Pending Class Certification Motion

The issue now before the Court is whether class certification is appropriate.  That issue
depends on whether Plaintiffs satisfy the five elements of (1) numerosity, (2) commonality,
(3) typicality, (4) adequacy, and (5) predominance.  Fed. R. Civ. P. 23(a)(1)-(4); Fed. R. Civ. P.
23(b); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 254-55
(S.D.N.Y. 2010).  The Kolchinsky and Wolson Declarations do *not* address any of these
elements.  Consequently, the declarations do not assist this Court and should be excluded.  *See*
*Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *13 n.22
(S.D.N.Y. Aug. 5, 2010) ("[expert's] testimony is itself irrelevant to the issue of class
certification" because "[expert] offers no opinion as to whether the requirements for class
certification have been met."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 540
(S.D.N.Y. 2004) (expert testimony must "have a valid connection to the pertinent inquiry").

The Kolchinsky Declaration opines on three things: (1) "whether the types of risks
inherent in the Pinnacle Notes could be understood or analyzed by retail investors," (2) "whether
the risks inherent in the Pinnacle Notes were visible to retail investors," and (3) "if the Plaintiffs'
allegations of Pinnacle Notes' over-exposure to the 'FIRE Entities' (by way of the ACES

3

underlying assets) are true or substantially true, whether such overexposure led to or caused the losses suffered on the Pinnacle Notes." Ex. 3 (Kolchinsky Decl.) ¶ 18.[1]  None of these things relates to the five relevant class certification elements.  Mr. Kolchinsky admitted at his deposition that he is not offering an opinion on class certification issues:

- "I was not asked to opine on issues of class certification, no." Ex. 1 (Kolchinsky Tr.) at 67:20-21.

- "I was not asked to opine on class certification." *Id.* at 71:7-8.

The Wolson Declaration opines that: (1) "[t]he Pinnacle Notes deviated significantly from industry custom and practice" and (2) "offering materials omitted information that would have been material to any reasonable investor." Ex. 4 (Wolson Decl.) ¶¶ 4, 5.  Neither of these opinions relates to the five relevant class certification elements.  Mr. Wolson also admitted at his deposition that he is not a class certification expert.  Ex. 2 (Wolson Tr.) at 21:20-22:4.

The Kolchinsky and Wolson Declarations should therefore be excluded because they do not assist the Court in resolving the pending class certification motion.  Decisions in this District reject proffered "class certification" expert declarations where the declarations do not relate to class certification.  *See Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 161 n.16 (S.D.N.Y. 2010) (ignoring expert declaration because "the [expert] declaration is entirely irrelevant on the issue of whether class certification is appropriate"); *Fogarazzo v. Lehman Bros., Ltd.*, No. 03 Civ. 5194(SAS), 2005 WL 361205, *1-3 (S.D.N.Y. Feb. 16, 2005) (excluding the vast majority of expert's opinions as irrelevant to class certification observing, "[b]ecause a 'class certification' expert may opine neither on legal issues nor on the ultimate merits of the case, the issues such an expert may address are quite limited.").

---

[1] "Ex." refers to exhibits attached to the accompanying Declaration of Andrew D. W. Cattell.

### III. The Kolchinsky and Wolson Declarations Are Not Based on Sufficient Facts

The Kolchinsky and Wolson Declarations are not based on sufficient facts and should also be excluded on this basis. *See DeMarco*, 222 F.R.D. at 248-249 (denying class certification where plaintiffs' expert's testimony was "transparently unreliable," in part because it failed to account for conflicting information).

### A. Kolchinsky

The Kolchinsky Declaration's first two opinions – (1) "whether the types of risks inherent in the Pinnacle Notes could be understood or analyzed by *retail investors*," (2) "whether the risks inherent in the Pinnacle Notes were visible to *retail investors*" – presume an understanding of *retail investors in Singapore*. Ex. 3 (Kolchinsky Decl.) at ¶ 18 (emphasis added). But Mr. Kolchinsky "was never asked to comment or opine on Singapore retail investors." Ex. 1 (Kolchinsky Tr.) at 92:8-10. Moreover, Mr. Kolchinsky *did not*:

- Speak with any of the Plaintiffs or any other Singapore retail investor *Id.* at 168:21-169:21, 183:5-21.

- Read any Plaintiff's deposition testimony. *Id.* at 169:19-21.

- Speak with any of the Distributor banks that sold Pinnacle Notes to Singapore retail investors. *Id.* at 189:5-11.

- Analyze the Singapore securities market. *Id.* at 91:25-92:3, 203:10-17.

- Examine any of the other credit linked notes offered to Singapore retail investors during the relevant period. *Id.* at 91:25-92:3, 203:10-17.

- Review the MAS's official report concerning Singapore structured retail products, including the Pinnacle Notes. *Id.* at 91:25-92:3, 203:10-17.

When asked how he could opine on what retail investors in Singapore could understand, analyze, know, or see, Mr. Kolchinsky testified that Plaintiffs' counsel described the substance of Plaintiffs' deposition testimony to him. *Id.* at 173:18-24. However, what Mr. Kolchinsky said

he was told was flatly untrue.  Mr. Kolchinsky testified he was told "the plaintiffs testified that

they had read the offering documents." *Id.* at 175:15-18.  To the contrary, every Plaintiff has

testified they did not read (or could not recall reading) the Pinnacle Notes offering documents.

Defs.' Class Cert Opp. at 5-6.  Expert declarations like the Kolchinsky Declaration that blindly

accept secondhand information are excluded to prevent precisely what has happened here. *See*

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, No. 95 Civ. 8136(RCC), 2001 WL 1602976, at *5

(S.D.N.Y. Dec. 14, 2001) (excluding declaration as unreliable because "[expert] based his report

on his client's unrealistic assurances rather than available records" and "[t]his is not the type of

shortcut to be expected from [expert witnesses]").

## B.    Wolson

The Wolson Declaration's two opinions – (1) "[t]he Pinnacle Notes deviated significantly

from industry custom and practice" and (2) "offering materials omitted information that would

have been material to any reasonable investor" – presume an understanding of both

(1) Singapore securities industry custom and practice and (2) what a "reasonable investor" is in

Singapore.  But Mr. Wolson has no understanding of either the Singapore securities marketplace

or Singapore investors.  Mr. Wolson:

- Is not an expert on matters related to the Singapore securities markets.  Ex. 2 (Wolson Tr.) at 22:20-23:4.

- Has no knowledge of the Singapore marketplace. *Id.* at 116:25-117:3.

- Has no knowledge of the risk appetite or investment motives of Singaporean investors. *Id.* at 117:4-7.

- Is not an expert in Singapore securities law. *Id.* at 22:20-23.

- "[W]as not asked to speak about what the standards may or may not be in Singapore[.]" *Id.* at 117:19-21.

- Has never spoken to a "reasonable investor" in Singapore. *Id.* at 117:24-118:2.

6

In addition, Mr. Wolson's alleged experience with credit linked notes offerings (products structured like the Pinnacle Notes) is limited to only "one or two" non-Singapore credit linked note issuances "[a]bout 11 or 12 years ago," which he could not identify. *Id.* at 130:11-131:7. Mr. Wolson also has no graduate, post-graduate or professional degree in any field relevant to his proffered testimony. *Id.* at 113:20-114:10. Like Mr. Kolchinsky, Mr. Wolson never spoke with any Plaintiff in this case or reviewed any Plaintiff's deposition testimony. *Id.* at 82:22-83:7. Also like Mr. Kolchinsky, Mr. Wolson did not research what any Plaintiff relied on when deciding to purchase Pinnacle Notes. *Id.* at 84:12-25.

## IV.     The Declarations of Mr. Kolchinsky and Mr. Wolson Constitute Improper Legal Opinions

The Kolchinsky and Wolson Declarations should also be excluded because they contain only legal opinions. "[I]t is axiomatic that an expert is not permitted to provide legal opinions, legal conclusions, or interpret legal terms." *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 480 (N.D.N.Y. 2004) (citing cases); *see also U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Courts prohibit expert testimony containing only legal opinions because it encroaches on the province of the court. *Id.*

### A.     Kolchinsky

At his deposition, Mr. Kolchinsky admitted that two of his three opinions – (1) "whether the types of risks inherent in the Pinnacle Notes could be understood or analyzed by retail investors," and (2) "whether the risks inherent in the Pinnacle Notes were visible to retail investors," – are opinions about materiality. Ex. 3 (Kolchinsky Decl.) ¶ 18. Mr. Kolchinsky said:

- "[M]y scope of work is clearly spelled out in paragraph 18. I was asked to see if the information provided to the investors in the Pinnacle Notes contained material omissions and that's what I concluded." Ex. 1 (Kolchinsky Tr.) at 101:4-8.

- "[M]y scope was to determine whether the information available to the investors in the Pinnacle Notes was sufficient and I concluded that there were material omissions about the risks the investors were going to take." *Id.* at 100:9-14.

- "I was never asked to opine on suitability, simply about the product and whether the disclosures that were made by the defendants were significant – sorry, the disclosures made by defendants were complete or contained material omissions." *Id.* at 92:14-19.

- "I was asked to opine on whether disclosures in the Pinnacle Notes were – omitted a large amount of relevant information and were materially deficient." *Id.* at 98:2-25.

Experts may not opine on the issue of "materiality" and "material omissions." *See Crown Cork & Seal Co., Inc. v. Credit Suisse First Boston Corp.*, Nos. 12-cv-05803-JLG, 2013 WL 978980, at *8 (S.D.N.Y. Mar. 12, 2013) (expert's opinions regarding the "materiality of [] omission" and whether alleged omission "would have been a material fact to reasonable investors" deemed "inadmissible legal conclusions"). An opinion about materiality "invades the province of the Court." *U.S. v. Tomasetta*, No. 10 Cr. 1205(PAC), 2011 WL 6382562, at *2 (S.D.N.Y. Dec. 12, 2011); *see also U.S. v. Jacques Dessange, Inc.*, No. S2 99 CR. 1182, 2000 WL 294849, at *3 (Mar. 21, 2000) ("[t]he issue of materiality is for the [fact-finder] to decide and [an] expert may not tender his opinion on that issue."); *U.S. v. Mavashev*, No. 08 Cr. 902 (DLI), 2010 WL 234773, at *4 (E.D.N.Y. Jan. 14, 2010) ("no witness, expert or otherwise, may testify as to legal conclusions, including whether a particular statement is material or not.").

The Kolchinsky Declaration's third conclusion – that (3) "the alleged overexposure of the FIRE Entities was responsible for the high level of losses suffered by the ACES Notes that supported the Pinnacle Notes" – is also a legal conclusion. Ex. 3 (Kolchinsky Decl.) ¶ 44. The Kolchinsky Declaration does *not* conclude that the Pinnacle Notes were overexposed to FIRE Entities. *Id.* ¶¶ 18, 30, 35, 44. Rather, the Kolchinsky Declaration assumes Plaintiffs' conclusory allegation of "overexposure" to be true and *then* concludes that the alleged

overexposure caused the Pinnacle Notes' losses. *Id.* Because the Kolchinsky Declaration simply *assumes* the alleged overexposure, this opinion is devoid of factual analysis and is nothing more than a legal conclusion. Expert opinions like this should be excluded. *See* Advisory Committee Note, Fed R. Evid. 704(a) (courts should "exclude opinions phrased in terms of inadequately explored legal criteria"); *Snyder v. Wells Fargo Bank, N.A.*, No. Civ. 4496(SAS), 2012 WL 4876938, at *5 (S.D.N.Y. Oct. 15, 2012) (securities experts may explain the applicable securities law but *cannot* opine on whether those laws were violated).

### B.     Wolson

The Wolson Declaration's first opinion, that "[t]he Pinnacle Notes deviated significantly from industry custom and practice," is an impermissible legal conclusion and must be excluded. Ex. 4 (Wolson Decl.) ¶ 4. "[T]estimony about industry practice may ***not*** be used to circumvent the prohibition on testimony that encompasses an ultimate legal conclusion." *Jacques Dessange*, 2000 WL 294849, at *2 (emphasis added); *see also Bilzerian*, 926 F.2d at 1295 ("testimony encompassing an ultimate legal conclusion . . . is not admissible, and may not be made so simply because it is presented in terms of industry practice"). In addition, Mr. Wolson has admitted that he did not conduct any investigation into the industry custom and practice of the Singapore markets. Ex. 2 (Wolson Tr.) at 6:13-17, 113:3-13. Mr. Wolson's opinion also therefore lacks any factual basis, and should be excluded on that ground as well.

The Wolson Declaration's second opinion, that "offering materials omitted information that would have been material to any reasonable investor," is an impermissible legal conclusion. Ex. 4 (Wolson Decl.) ¶ 5. This is an opinion about materiality. As explained above, courts routinely exclude opinions about materiality because they are legal conclusions.

**V.      Neither Expert's Opinion Is Based on Reliable or Sufficient Data and Neither Employs a Reliable Methodology**

The Kolchinsky and Wolson Declarations are not "reliable" under *Daubert*. Under *Daubert*, a court must ensure that expert testimony rests on "sufficient facts or data" and that it is "the product of reliable principles and methods [that have been applied] reliably to the facts of the case." Fed. R. Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). "[I]t is critical that an expert's analysis be reliable at every step." *Amorgianos*, 303 F.3d at 266-67. Accordingly, a court should "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* at 267. The limited data and the non-existent methodologies of the Kolchinsky and Wolson Declarations demonstrate that there is no foundation for their respective conclusions.[2]

**A.      Kolchinsky**

The Kolchinsky Declaration fails *Daubert*'s gatekeeping "reliability" requirement. Perhaps most significantly, Mr. Kolchinsky did *not* do the bulk of the work when writing his purported declaration. Mr. Kolchinsky has admitted that a colleague named Gene Phillips "runs the office, he runs the firm. The way I set up the declaration, *he does the bulk of the work*, I edit it, I look at it, I look at the numbers." Ex. 1 (Kolchinsky Tr.) at 27:5-11 (emphasis added). A proffered expert may not serve simply as a conduit for the opinions of another person. *See Hutchinson v. Groskin*, 927 F.2d 722, 724-25 (2d Cir. 1991); *Weitz Co., LLC v. Lloyd's of*

---

[2] The reliability requirement applies to all types of alleged expert testimony. *See Kumho*, 526 U.S. at 141, 146. Together *Daubert* and *Kumho* set forth a five-factor test courts consider in evaluating the reliability of expert testimony: (1) whether the expert's methodology can be tested; (2) whether the methodology has been subject to peer review and publication; (3) whether the methodology has a known potential rate of error; (4) whether there are standards controlling the methodology used; and (5) the degree to which the methodology has been generally accepted in the scientific community. *See Daubert*, 509 U.S. at 593-94; *Kumho*, 526 U.S. at 150-51.

*London*, No. 4:04 CV 90353, 2007 WL 7131908, at *2-4 (S.D.Iowa 2007) (excluding expert declaration initially drafted and researched by an assistant).

In addition, the Kolchinsky Declaration cites nothing more than Mr. Kolchinsky's own subjective, personal points of view in support of its conclusions. *See* Ex. 1 (Kolchinsky Tr.) at 182:12-17. Citation to an expert's own subjective views is not sufficient. *See In re Credit Suisse First Boston Corp. Sec, Litig.*, 250 F.R.D. 137, 145 (S.D.N.Y. 2008) (decertifying securities fraud class where plaintiff's expert's opinion was "based not on facts but on speculation" and could therefore not be tested). Opinion that "is connected to existing data only by the *ipse dixit* of the expert" should not be admitted. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Simply put, Mr. Kolchinsky failed to employ a reliable methodology in formulating his opinions. None of the opinions in the Kolchinsky Declaration has ever been tested, subjected to peer review or publication, or enjoy general acceptance within the relevant community. The Kolchinsky Declaration does not identify any methodology that it employed and no methodology is apparent. Opinion based on unfounded extrapolation, insufficient facts or data, or unsupported suppositions should be rejected. *See U.S v. Tin Yat Chin*, 371 F.3d 31, 40-41 (2d Cir. 2004).

Specifically, the Kolchinsky Declaration's first opinion – that the types of risks inherent in the Pinnacle Notes could not be understood or analyzed by retail investors – is baseless. Ex. 3 (Kolchinsky Decl.) ¶¶ 18, 41. Mr. Kolchinsky presumes to opine on Singapore regulated securities and Singapore retail investors – yet he did not speak to a single Singapore retail investor or Singapore regulator, and he did not examine a single Singapore securities offering. Ex. 1 (Kolchinsky Tr.) at 91:25-92:3, 183:16-21, 203:10-17. In fact, the Kolchinsky Declaration entirely ignores the comparable Singapore credit linked note offerings by others in and around the time of the Pinnacle Notes' offering. *Id.* at 203:10-17, 204:17-24.

The Kolchinsky Declaration's second opinion – that the risks inherent in the Pinnacle Notes were not visible to retail investors – rests entirely on Mr. Kolchinsky's subjective say-so. Ex. 3 (Kolchinsky Decl.) ¶¶ 18, 42. Plaintiffs purchased Pinnacle Notes from independent Distributor banks and *not* from any of the Defendants. Under Singapore law, these Distributor banks had the duty to highlight the relevant risks of the Notes for potential investors. *See* Ex. 5 (MAS Report) at ¶¶ 9, 16 at 5, 7-8. Despite the Distributor banks' centrality to this case, Mr. Kolchinsky was entirely unaware of their existence and was unaware of the role they played in the Pinnacle Note transactions. Ex. 1 (Kolchinsky Tr.) at 189:5-12. Mr. Kolchinsky did not speak with or examine any of the Distributor banks who directly sold Pinnacle Notes to Plaintiffs. *Id.* The Kolchinsky Declaration's failure to examine how the Pinnacle Notes were actually sold to Plaintiffs, and by whom, completely eviscerates his utterly speculative and wholly unreliable conclusions.[3]

Mr. Kolchinsky's third opinion – that an assumed "over-exposure" to "FIRE Entities" caused the Pinnacle Notes' losses – is also unreliable under *Daubert*. Ex. 3 (Kolchinsky Decl.) ¶¶ 18, 44. The Kolchinsky Declaration never defines what it means by "over-exposure," a totally subjective and elastic concept. This alone makes it impossible to verify Mr. Kolchinsky's methodology.

The Kolchinsky Declaration also does not offer the opinion that the Pinnacle Notes were over-exposed to "FIRE Entities." Instead, the Kolchinsky Declaration *assumes* "over-exposure." The Kolchinsky Declaration then compares the reference portfolios of the Pinnacle Notes'

---

[3] Moreover, a review of the relevant Pinnacle Note offering documents demonstrates that the "risks" identified by Mr. Kolchinsky were in fact clearly disclosed to potential investors. *See generally* Ex. 6 (Ethan Cohen-Cole Decl.). Besides, the Kolchinsky Declaration does not opine on whether the "risks" identified in the declaration led to any losses for Pinnacle Notes investors. *Id.* ¶ 17. Thus, in addition to being unreliable this opinion is entirely irrelevant.

Underlying Assets to the performance of an inapposite reference index of credit risks. *Id.* at ¶ 37. The Kolchinsky Declaration offers no facts or data in support of its chosen reference index. At deposition, Mr. Kolchinsky admitted that there were multiple versions of the index during the relevant time period. Ex. 1 (Kolchinsky Tr.) at 266:9-267:9. Mr. Kolchinsky admitted that he did not use the version of the index that was issued closest to the time of each relevant Pinnacle Notes issuance. *Id.* at 267:10-21. Mr. Kolchinsky admitted that using different indices would have been possible, and he did not know if using an index issued closer to the Pinnacle Notes issuance date would have affected the results of his analysis. *Id.* at 267:16-268:9.

Furthermore, Mr. Kolchinsky admitted that his chosen reference index is comprised solely of North American entities. *Id.* at 148:17-19. Yet the Pinnacle Notes' Underlying Assets referenced numerous non-North American entities. *Id.* at 145:14-23, 156:10-25. Moreover, the Kolchinsky Declaration's chosen reference index does not include foreign sovereigns, which the Pinnacle Notes' Underlying Assets did reference.[4] *Id.*

In addition, Mr. Kolchinsky failed to examine other contemporaneous credit linked notes issuances in Singapore to determine how the portion of "FIRE Entities" in their portfolios compared with the "FIRE Entities" in the Pinnacle Notes' portfolios. *Id.* at 100:16-101:11, 203:10-17.

In sum, Mr. Kolchinsky just made it up as he went along. He conducted no analysis, let alone a "rigorous" analysis of the relevant and available data as mandated by Rule 702. He

---

[4] Mr. Kolchinsky also failed to examine whether FIRE Entities were widely used in synthetic CDOs at the time the Pinnacle Notes' Underlying Assets were issued; failed to examine the risk of default of the FIRE Entities at the time the Pinnacle Notes' Underlying Assets were issued; and failed to examine how the removal of the FIRE Entities would have changed the risk profile of the Pinnacle Notes' Underlying Assets over a variety of other dimensions. Ex. 1 (Kolchinsky Tr.) at 262:8-263:6, 263:17-264:25; *see also* Ex. 6 Cohen-Cole Declaration ¶¶ 32-41.

failed to offer a testable or verifiable methodology.  Accordingly, his testimony should be excluded.

**B.    Wolson**

The Wolson Declaration is not "reliable" under *Daubert* because the Wolson Declaration also does not employ a verifiable methodology and does not rest on sufficient information.

The Wolson Declaration offers two conclusions: (1) "[t]he Pinnacle Notes deviated significantly from industry custom and practice" and (2) "offering materials omitted information that would have been material to any reasonable investor."  It is clear that the Wolson Declaration employs *no methodology whatsoever* in reaching these conclusions.  Instead, the opinions expressed in the Wolson Declaration are the result of Mr. Wolson's own subjective musings.

At each step of his purported "analysis," Mr. Wolson failed to consider critical and highly relevant information.  As Mr. Wolson admitted at deposition, he *failed* to "conduct any investigation, in the broadest sense – read any material; speak with anyone – to learn what the custom and practices are in the Singapore financial markets . . . or how securities are distributed or sold in the Singapore marketplace."  *See* Ex. 2 (Wolson Tr.) at 113:3-13.  This case concerns securities registered by the Monetary Authority of Singapore ("MAS"), arranged by a Singapore entity, distributed solely by Singapore banks, and marketed and sold exclusively in Singapore to Singaporeans.  Yet Mr. Wolson did not take into account any of these facts when preparing his expert declaration.

This categorical failure to consider highly relevant information and data undermines the entire Wolson Declaration.  *See S.E.C. v. Badian*, 822 F. Supp. 2d 352, 359-62 (S.D.N.Y. 2011) (striking multiple sections of securities expert's declaration that "exclud[ed] an analysis of key facts and suffer[ed] from improper test design").  For example, Mr. Wolson conceded that prior

to drafting his declaration, he failed to read the MAS's official report investigating Singapore

credit linked note offerings, including Pinnacle Notes. *See* Ex. 2 (Wolson Tr.) at 6:13-17. This

is critical because the MAS Report includes facts about Singapore industry custom in the credit

linked note market. The MAS Report indicates that the Pinnacle Notes' structure and underlying

assets were not unusual for the Singapore retail market in 2006-2008. *See* Ex. 5 (MAS Report)

at ¶ 1, at 1; ¶ 2(d), at 2.

In addition, Mr. Wolson's opinions cannot be independently tested or verified. His

opinions are not supported by *any* methodology, let alone a verifiable methodology. Mr. Wolson

never explains the standard he used to determine if the Pinnacle Notes "deviate[d] materially"

from credit linked note industry custom and practice. Courts are particularly reluctant to admit

expert testimony as to so-called industry standards where those standards lack any objective

support. *See In Re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 543 & n.29 (S.D.N.Y.

2004) (rejecting expert witnesses' testimony as unreliable and nothing more than "personal,

subjective views"). Here, Mr. Wolson recites nothing more than his "experience" in support of

his conclusions. But Mr. Wolson's experience consists of being a New York corporate attorney

at thirteen different firms. Mr. Wolson has never been qualified by a court as an expert and on

the one prior occasion where he tendered an expert report, the court refused to admit his report

into evidence. See Ex. 2 (Wolson Tr.) at 15:4-16:24, 20:14-18. Mr. Wolson did not apply an

established and verifiable methodology that would enable this Court to test his opinions.

Mr. Wolson never explains the standard he used to determine if the Pinnacle Notes'

offering materials "omitted information that would have been material to any reasonable

investor." Indeed, at his deposition, Mr. Wolson admitted that "in writing the declaration, I'm

*assuming* that the [applicable] standards are basically the same as I'm familiar with[.]"  Ex. 2

(Wolson Tr.) at 116:7-16.  But assumptions do not suffice under *Daubert*.

Because the Wolson Declaration is supported by nothing more than Mr. Wolson's

subjective views, it is categorically unreliable.  *See Linkco, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242

(SAS), 2002 WL 1585551, at *4 (S.D.N.Y. July 16, 2002) ("[The expert] supports his opinions

with references to his 'experience' but without explaining how he reached his conclusions . . . he

must do more than aver conclusorily that his experience led to his opinion." (internal quotations

omitted)); *Grdinich v. Bradlees*, 187 F.R.D. 77, 81-82 (S.D.N.Y. 1999) (excluding opinions

supported only by expert's "own authority").

## Conclusion

The Kolchinsky and Wolson Declarations do not meet *Daubert*'s requirements for admissibility.  Defendants therefore respectfully request that the Court grant Defendants' motion to exclude the declarations of Ilya Eric Kolchinsky and Craig A. Wolson from the Court's consideration of Plaintiffs' motion for class certification.[5]

Dated: New York, New York
      April 26, 2013

SIMPSON THACHER & BARTLETT LLP

By _____
    Bruce D. Angiblillo
      *bangiolillo@stblaw.com*
    Jonathan K. Youngwood
      *jyoungwood@stblaw.com*
    Andrew D. W. Cattell
      *acattell@stblaw.com*
    425 Lexington Avenue
    New York, New York 10017-3954
    Telephone:   (212) 455-2000
    Facsimile:   (212) 455-2502

*Attorneys for Defendants Pinnacle Performance Limited, Morgan Stanley Asia (Singapore) Pte., Morgan Stanley & Co. International plc, Morgan Stanley Capital Services Inc., Morgan Stanley & Co. Inc. and Morgan Stanley*

---

[5] Defendant Pinnacle Performance Limited has not entered a general appearance in this action and continues to maintain that this Court lacks subject matter jurisdiction over it.  Accordingly, and to preserve its personal jurisdiction objection, Pinnacle is not a signatory to this brief.